Estate of Thomas A. Walsh, Deceased, Thomas A. Walsh, Jr., Administrator v. Commissioner. Thomas A. Walsh, Jr. v. Commissioner. Estate of Mary P. Walsh, Deceased, Thomas A. Walsh, Jr., Executor v. Commissioner. Thomas A. Walsh, Jr. (as Transferee) v. Commissioner. Estate of Mary P. Walsh, Deceased, Transferee, Thomas A. Walsh, Jr., Executor v. Commissioner.
Estate of Thomas A. Walsh v. Commissioner
Docket Nos. 10591, 10592, 10593, 10790, 10791.
United States Tax Court
1947 Tax Ct. Memo LEXIS 196; 6 T.C.M. (CCH) 606; T.C.M. (RIA) 47151; May 29, 1947
Daniel J. Gross, Esq., Joseph J. Vinardi, Esq., 730 Farm Credit Bldg., Omaha, Nebr., and John A. O'Malley, Esq., for the petitioners. Harlow B. King, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve income tax deficiencies as follows: Docket
Deficiency in
Number
Period Involved
Income Tax
10591
1941
$10,713.12
1-1-42 to 2-24-42
11,589.00
10592
1943
6,116.98
10593
1943
9,876.39
10790
1941
10,713.12
1-1-42 to 2-24-42
11,589.00
10791
1941
10,713.12
1-1-42 to 2-24-42
11,589.00
In Docket No. 10593 the respondent has filed an amended answer in which he asks for an increased deficiency for 1943 of $37,625.71. All but one of the several issues raised *197 involve the question of the liability of the petitioners for tax on the income of a family owned and operated business of manufacturing and selling punchboards. The petitioners claim that the business was conducted as a partnership throughout the several different periods involved with the interests of the partners changing as new agreements were entered into. The respondent, in his deficiency notices, recognized a valid partnership for some, but not all, of those periods and adjusted the beneficial interests of the petitioners for those periods. In doing so he allowed salaries to some of the alleged partners. A capital gain issue arising from the liquidation of a predecessor corporation is also involved. While the deficiencies determined in Docket Nos. 10592 and 10593 are for the year 1943 only, the year 1942 is also before us because of the provisions of the Current Tax Payment Act of 1943. Findings of Fact Thomas A. Walsh, Sr., and his wife, Mary P. Walsh, now both deceased, were married at Omaha, Nebraska, in November, 1911. They came to Omaha from the State of New York. They both obtained employment in Omaha. While employed in their regular jobs they began the manufacture, *198 on a small scale, of punchboards for sale to local tobacco and candy merchants who used them for display purposes. At first they purchased new boards from a Chicago manufacturer and also collected and refilled old boards which had been punched out. Later on they began manufacturing their own boards. Most of this work was done by Mrs. Walsh in their apartment after regular working hours. Mr. Walsh distributed the boards to the merchants during the day in his spare time. The punchboard business prospered so that after a few years both Mr. And Mrs. Walsh were able to give up their jobs and devote their full time to it. In about 1920 they moved the business to rented quarters over a wholesale grocery store in downtown Omaha. Thereafter, Mrs. Walsh continued to devote her full time to the business, except for a short period in the latter part of 1920 when a son, Thomas A. Walsh, Jr., was born. She and Mr. Walsh both spent long hours at the plant. Mrs. Walsh had supervision over the employees who at that time numbered about twenty, while Mr. Walsh devoted most of his time to sales and distribution. Mrs. Walsh made several improvements in the design and in the process of manufacturing the *199 punchboards. In 1929 the business was incorporated under the name of Thomas A. Walsh Manufacturing Company. All of the capital stock, 250 shares, was issued in the name of Mrs. Walsh except one qualifying share which was issued to Mr. Walsh. No capital account, as such, was set up in the company's books but an opening entry was made showing a credit to the company's account of $15,564.56 with the notation, "Transferred from T. A. Walsh". No other capital contributions were shown on the company's books. The evidence is, however, Mrs. Walsh contributed $3,000 which she had inherited. The business was conducted at all times, before as well as after its incorporation, as a joint enterprise, The parties regarded themselves as equal owners. They kept all their funds in a joint bank account from which both drew funds from time to time. They never had any agreement as to salaries or as to the distribution of the profits. The corporation never paid any dividends. For several years prior to 1941 Mr. Walsh had been suffering from high blood pressure and a heart condition which had grown progressively worse. Hospitalization was required from time to time. He was repeatedly advised by his *200 doctors to slow down and do less work. He did not tell Mrs. Walsh of the seriousness of his condition. However, in 1941 he did talk the matter over with his son, Tom, then 20 years of age and a law student at Notre Dame University. He told Tom that he wanted him to come and help with the business, after his graduation, and that if he would agree to do so they, he and Mrs. Walsh, would dissolve the corporation and form a limited partnership with him, Tom, a member. Tom agreed to this proposal. A limited partnership agreement was entered into on June 1, 1941, designating Thomas A. Walsh, Sr., as the "general partner", and Mary P. Walsh and Thomas A. Walsh, Jr., as the "limited partners". The agreement provided that the partnership was to commence June 1, 1941, and continue until January 1, 1952, unless sooner terminated by Mr. Walsh, who was given that power, or by operation of law; that Tom and Mrs. Walsh should each contribute $1,000 of capital to the partnership; that Mr. Walsh should have "full and exclusive right, power and authority to manage, control and operate the business of said partnership"; that the partners should each be entitled to one-third of the profits; that upon *201 dissolution of the assets of the partnership, after settling all accounts, would be applied, first, to the repayment of the capital contributions by Mr. Walsh (there was no provision in the partnership agreement as to his capital contribution), and second, to the repayment of the capital contributions of Tom and Mrs. Walsh, and that the remaining assets, if any, including the trade name and good will, should become the property of Mr. Walsh. The corporation was dissolved on May 31, 1941, but at that time there was no formal distribution or appraisal of the assets. The amount of $15,564.56 was transferred to the drawing account of Thomas A. Walsh, Sr., and there was a remaining "surplus" of $9,946.33 which was transferred in equal parts to the investment accounts of Thomas A. Walsh, Sr., Mary P. Walsh and Thomas A. Walsh, Jr. An examining revenue agent adjusted the surplus account for losses of prior years, which had been charged against the investment account and taxes, to the amount of $5,333.33. None of the capital or surplus was withdrawn from the business at that time. The earnings from January 1 to May 31, 1941, amounted to approximately $10,000. The business was continued in *202 the limited partnership form without substantial change. Because of his father's health Tom decided to give up his schooling temporarily and devote all of his time to the business. He endeavored to take over as much as he could of his father's duties. He had worked at the plant from time to time since he was a small boy and was familiar with all phases of the business. Later in 1941, about December 1, Mr. Walsh's condition improved somewhat and Tom decided to return to Notre Dame to finish his law course, which required only a few more months. On February 24, 1942, Mr. Walsh died suddenly. He left a will which provided: "I give, bequeath and devise to my wife, Mary P. Walsh, all my property, real, personal, or mixed, of whatever nature and wherever situate. * * *
"I express as my earnest wish and desire, by which I trust my aforesaid wife and son will abide, that if I shall die leaving my aforesaid wife and son living, and if, thereafter, my wife and son shall engage jointly in any business enterprise wherein assets bequeathed by this testament be used, that in such event the profits or income of such business shall be shared two-thirds (2/3) by my said wife, and one-third *203 (1/3) by my aforesaid son." After his father's death Tom returned to Omaha to devote his full time to the business. Mrs. Walsh was named sole executrix of her husband's will. She and Tom agreed informally that they would operate the business jointly and share the profits as suggested by Mr. Walsh in his will, that is, two-thirds to Mrs. Walsh and one-third to Tom. Since Mr. Walsh's death Tom has devoted all of his time to the business and has been largely responsible for its management. His mother's health prevented her from taking any active part in it. She suffered a nervous breakdown after Mr. Walsh's death and never completely recovered. She is now deceased. There was no agreement between her and Tom as to their capital interests in the business. Mr. Walsh's estate was valued at $64,271.25. It included cash, $1,067.95, stocks, $47,437.50, and machinery and supplies, $15,765.80. After payment of debts and claims there was a net estate of $37,091.86, which was distributed on December 16, 1942. Tom filed and was allowed a claim against his father's estate for $22,619, representing one-third of the profits of the Thomas A. Walsh Manufacturing Company from May 31, 1941, until *204 his father's death, February 24, 1942. In satisfaction of this claim his mother, as executrix, transferred to him an approximately equivalent amount of shares of stock belonging to the estate. A partnership return was filed in the name of Thomas A. Walsh Manufacturing Company for the period June 1 to December 31, 1941, in which there was reported a net income of $28,925.10, distributable to the three partners in equal shares. That was the profit shown in the return after the deduction of officers' salaries for the period June 1 to December 31, 1941, as follows: Thomas A. Walsh, Sr.
$7,291.70
Mary P. Walsh
2,100.00
Thomas A. Walsh, Jr.
2,100.00 The company's books showed those salaries credited to the individual members' accounts. They also showed salaries credited for the first five months of 1941 of $5,208.30 for Mr. Walsh and $1,500 for Mrs. Walsh. No salary was shown as credited to Tom's account for that period. No income tax return was ever filed on behalf of Mr. Walsh's estate. The profits of the Thomas A. Walsh Manufacturing Company for the period during which the estate was in process of administration were reported in a partnership return filed for *205 that period, as explained below. About September 30, 1942, Mrs. Walsh discussed with her attorney and Tom the matter of making gifts to Tom and his wife, Marjorie C. Walsh, and their infant daughter, Mary, then less than one year of age, of interest in the assets and business of the Thomas A. Walsh Manufacturing Company and forming a partnership composed of the four of them. She told Tom and his wife at that time that she was making these gifts. On December 15, 1942, she executed formal assignments, said to be effective as of September 30, 1942, of an undivided one-fourth interest in the assets and the business to each of the parties named. She filed a gift tax return in which she reported gifts to the assignees valued at $3,941.45 each. The gift tax return showed no tax liability. The amount of each alleged gift, $3,941.45, was one-fourth of the value at which the assets of the business, listed as "machinery and supplies" were appraised in Mr. Walsh's estate. On December 16, 1942, the day following the execution of the above mentioned assignments, the County Court issued an order approving the final account which Mrs. Walsh, as executrix, filed on Mr. Walsh's estate, and ordered *206 distribution of the assets of the Thomas A. Walsh Manufacturing Company, together with the profits from the business from September 30, 1942, to the assignees of Mrs. Walsh. No partnership or other written agreement was entered into by the parties at that time and there was no appraisal of the company's assets or closing of its books. The business was continued as before under Tom's management. A written partnership agreement was executed on March 10, 1943, by Mrs. Walsh, Tom, his wife, Marjorie, and Thomas A. Walsh, Jr., as guardian for his daughter, Mary. The agreement provided: "IV. "The capital of the partnership shall be all of the assets of the said THOMAS A. WALSH MANUFACTURING COMPANY, LTD. as they existed on September 30, 1942, and the accumulations of profits since that date are to be credited one-fourth (1/4) each to the partners herein. * * *
"VI. "The books of said partnership should be set up as of September 30, 1942, dividing the assets of said partnership one-fourth (1/4) to each of the partners hereto and all the credits and debts thereafter carried to the account of each partner as to his capital investment. "VII. "None of the partners shall draw *207 or be entitled to any commissions, wages, salaries or remuneration for work or services performed on behalf of said partnership unless otherwise agreed by all of the partners. "VIII. "Each of said partners shall be entitled to one equal one-fourth (1/4) part of the profits of said business and all losses happening in the course of said business shall be borne in the same proportions." It was further agreed that the parties could withdraw from time to time a "reasonable amount" of the accumulated earnings of the business but could not withdraw any of the assets or capital. It was further provided that Tom should be the manager of the business and devote his full time and attention to it, but should not be entitled to any remuneration beyond his one-fouth share of the net earnings. The other partners were to give to the business "such time and attendance and skill as may be within their province". No partner could sell or dispose of his capital interest without first having offered it to the other members. Upon a member's death the other members were to have the option of purchasing his or her share at a price to be agreed upon by the parties in interest. Each member was entitled *208 to receive his pro rata share of the assets upon dissolution of the partnership. No change was made in the conduct of the business after these assignments were made by Mrs. Walsh. Neither Marjorie Walsh nor her daughter, Mary, ever contributed any services or any independent capital to the business. There was no closing of the company's books, no adjustment of inventories or crediting of profits to the accounts of any individual and no individual accounts were set up on the company's books until the close of the year 1942. As of December 31 of that year credits were made to the several accounts which were then set up for the individual partners to reflect their shares of the profits for each of the separate periods of that year and new investment accounts in the amount of $2,486.58 each were set up for Marjorie Walsh and her daughter, Mary. Partnership returns were filed in the name of the Thomas A. Walsh Manufacturing Company for the periods June 1 to December 31, 1941, January 1 to February 28, 1942, March 1 to September 30, 1942, October 1 to December 31, 1942, and for the calendar year 1943. The return for the period June 1 to December 31, 1941, showed a net income of $28,925.10 *209 distributable to Thomas A. Walsh, Sr., Mary P. Walsh and Thomas A. Walsh, Jr., in equal shares. The partnership return for the period January 1 to February 28, 1942, showed partnership income of $32,672.68, distributable equally to Thomas A. Walsh, Sr., Thomas A. Walsh, Jr., and Mary P. Walsh. The return for the period March 1 to September 30, 1942, showed a net income of $78,688.31, distributable two-thirds, $52,458.88, to Mary P. Walsh, and one-third, $26,229.43, to Thomas A. Walsh, Jr. The returns for the period October 1 to December 31, 1942, and for the calendar year 1943, showed net incomes of $30,738.91 and $65,008.98, respectively, distributable equally to Mary P. Walsh, Thomas A. Walsh, Jr., Marjorie Walsh and Mary Walsh. The Commissioner's determinations in the several deficiency notices on which these proceedings are predicated are as follows: Estate of Thomas A. Walsh, Deceased, Thomas A. Walsh, Jr., Administrator, Docket No. 10591 That the entire income of Thomas A. Walsh Manufacturing Company for the period June 1 to December 31, 1941, amounting to $28,925.10, and for the period January 1 to February 24, 1942 (the date of death of Thomas A. Walsh, Sr.), amounting *210 to $32,672.68, is taxable to Thomas A. Walsh, Sr. (in computing the amount of the net income for the period January 1 to February 24, 1942, a deduction of $600 was allowed as salary for Mary P. Walsh); that Thomas A. Walsh, Sr. realized a long-term capital gain of $2,666.67 in 1941 from the dissolution of the Thomas A. Walsh Manufacturing Company. Thomas A. Walsh, Jr., Docket No. 10592 That Thomas A. Walsh, Jr., was not a partner in the business and is not taxable on any of the income therefrom above a reasonable amount of compensation for services rendered either in 1941, or for the period January 1 to September 30, 1942; that for the period October 1 to December 31, 1942, and for the year 1943, Thomas A. Walsh, Jr., was a partner in the business and is taxable on three-fourths of the income therefrom, amounting respectively to $23,054.18 and $48,756.74. Estate of Mary P. Walsh, Deceased, Thomas A. Walsh, Jr., Executor Docket No. 10593 That Mary P. Walsh was not a partner in the business and is not taxable on any of the income therefrom in 1941 and for the period January 1 to February 28, 1942, is taxable only on a salary of $600; that for the period March 1 to September 30, 1942, Mary *211 P. Walsh was the sole owner of the business and is taxable on all of the income therefrom, amounting to $75,188.31; that after October 1, 1942, the business was conducted as a partnership and that for the period October 1 to December 31, 1942, Mary P. Walsh is taxable on one-fourth of the income therefrom, amounting to $7,684.73. By amended answer the respondent asserts that the Thomas A. Walsh Manufacturing Company was not a partnership at any time during 1942 and that from March 1 to December 31, 1942, the business and assets were owned either by the estate of Thomas A. Walsh, Sr., or by Mary P. Walsh, individually; and that the income for the period October 1 to December 31, 1942, amounting to $30,738.92 is taxable to Mary P. Walsh either as owner or as the sole heir and legatee of Thomas A. Walsh, Sr. The respondent further asserts in his amended answer that the business was not conducted as a partnership in 1943 and that he erred in not taxing all of the income for that year amounting to $65,008.96 to Mary P. Walsh. He asks that the deficiency against her be increased accordingly. Thomas A. Walsh, Jr. (as Transferce), Docket No. 10790 That Thomas A. Walsh, Jr., is liable *212 as transferee of the assets of the estate of Thomas A. Walsh, Sr., for income tax deficiencies due from the estate for 1941 and 1942 in the aggregate amount of $22,302.12. (These are the same deficiencies asserted against Thomas A. Walsh, Jr., as Administrator of the Estate of Thomas A. Walsh, Sr., as explained above under Docket No. 10591). Estate of Mary P. Walsh, Deceased, Transferee, Thomas A. Walsh, Jr., Executor, Docket No. 10791 That Mary P. Walsh is liable as transferee of the assets of the Estate of Thomas A. Walsh, Sr., for income tax deficiencies due from the estate of $22,302.12 for the taxable years 1941 and 1942. (These are the same deficiencies involved in Docket Nos. 10591 and 10790 above.) Opinion LEMIRE, Judge: The principal questions raised in these proceedings are whether the business of the Walsh Manufacturing Company was conducted as a family partnership for each of the several different periods involved and, if so, who were the partners and what were their distributive shares of the income. The capital gain issue will be discussed after these questions are decided. It will be noted that there are three separate and distinct periods during which either *213 the existence or composition of the partnership is challenged. The first of these periods is June 1, 1941 tofebruary 24, 1942, during which Thomas A. Walsh, Sr., Mary P. Walsh and Thomas A. Walsh, Jr., were the alleged partners; the second is February 25, 1942, to September 30, 1942, during which Mary P. Walsh and Thomas A. Walsh, Jr., were the alleged partners, and the third in October 1, 1942, to December 31, 1943, during which Mary P. Walsh, Thomas A. Walsh, Jr., Marjorie H. Walsh, and Thomas A. Walsh, Jr., as guardian for his infant daughter, Mary Walsh, were the alleged partners. The respondent now contends that there was no valid partnership for any of those periods; that the income from the business was all taxable to Thomas A. Walsh, Sr., during his lifetime; that after his death it was all income of his estate, until the estate was closed (but during that period was taxable to Mary P. Walsh under section 162(c) of the Internal Revenue Code); and that thereafter, until the close of 1943, it was all taxable to Mary P. Walsh as the sole owner of the business, or was taxable three-fourths to her and one-fourth to Tom, or was taxable one-fourth to her *214 and three-fourths to Tom. During his lifetime Thomas A. Walsh, Sr., held himself out as the sole owner of the business, although Mrs. Walsh was equally responsible for its development and had contributed equal services and capital. In the early years of development capital had played a small part. The growth and success of the business were attributable almost entirely to the personal efforts of both Mr. and Mrs. Walsh. Because of his failing health and the realization that he would have to curtail his activities Mr. Walsh was desirous of having his son, Tom, then attending Norte [Notre] Dame University, take an active part in the business. The limited partnership agreement of June 1, 1941, was made for that purpose. Tom and his mother were designated "limited partners" and were to be entitled to one-third of the profits of the business but were to have no interest in the capital above the $1,000 which, under the agreement, each of them was to contribute. Those contributions apparently were never made. For although Tom testified that he made his contribution of $1,000 there is no record of it in the company's books. The only capital of which there is any record is that acquired *215 from the dissolved corporation. Under the limited partnership agreement Tom and Mrs. Walsh were both to devote full time to the business. The evidence is that their services were of substantial value and were ample to justify their participation as partners in the business. A few months later, after his father's death, Tom was required to take over the responsibilities of manager. While, as the respondent points out, this was strictly a family enterprise, there is no basis for his contention that the partnership arrangement was merely an effort to reallocate family income for the purpose of avoiding tax, and therefore had no reality. To the contrary, there is substantial evidence that the partnership was genuine and for a practical business purpose. The fact that salaries were paid to the partners before computation of their share of distributable income does not alter the situation. Neither does the fact that the partners did not withdraw their full shares of the earnings. The evidence is that all three of the partners were authorized to draw on the partnership fund. All of the partners were credited on the partnership books with their share of the earnings and those earnings *216 were included in their individual income tax returns. It is not shown that any of the partners actually withdrew any more than their salary. Mr. Walsh invested all of Tom's share of the earnings, above his salary, in securities. The securities were purchased in his (Mr. Walsh's) name but Tom's right to his share of the earnings was established by the order of the County Court allowing his claim against Mr. Walsh's estate for the full amount thereof. Considering Mr. Walsh's failing health and his need of Tom's help in running the business and the fact that it meant that Tom might have to give up his schooling it was in no sense unreasonable or unrealistic for him to be given an equal share in the profits. We conclude that there was a valid partnership for the period June 1, 1941, to February 24, 1942, the date of Mr. Walsh's death, and that for that period the profits of the business are taxable to the three partners in equal shares. This partnership, of course, was terminated by the death of Mr. Walsh on February 24, 1942. The assets of the Thomas A. Walsh Manufacturing Company, consisting of machinery and equipment, were included in his personal estate at a valuation of $15,765.80. *217 These assets were all left in the business and the business was continued as before, under the joint management of Mrs. Walsh and Tom. This brings us to the second period, February 25 to September 30, 1942. The petitioners contend that a new partnership agreement was entered into by Mrs. Walsh and Tom on or about the beginning of that period under which, in accordance with the wish expressed by Mr. Walsh in his will, Mrs. Walsh was to receive two-thirds of the profits in the business and Tom, one-third. There was no written agreement between them. The capital situation remained unchanged and no claim is made that the agreement in any way affected the capital interests. In his will Mr. Walsh treated all of the capital employed in the business as his individual property, and it was so treated in the settlement of his estate. He provided in his will that it should all go to Mrs. Walsh and named her as the sole executrix of his will. As executrix she made a final distribution of the assets of the estate, which included the assets and business of the Thomas A. Walsh Manufacturing Company, to herself and her assigns, on December 16, 1942. The respondent contends that until the assets of *218 the Thomas A. Walsh Manufacturing Company were finally distributed the income from the business belonged to the estate of Mr. Walsh, but is all taxable to Mrs. Walsh under the provisions of section 162 (c). Section 161 (a)(3), Internal Revenue Code, requires the income of the estate of a deceased person during the period of administration to be reported in the income tax return of the estate. We think that the income for the Thomas A. Walsh Manufacturing Company must be included in the gross income of Mr. Walsh's estate to the extent that it was attributable to the assets held in the estate. See Esther Rosenberg, 7 T.C. 73. During the period of administration the business was operated under the agreement which Mrs. Walsh made with Tom, whereby she was to receive two-thirds of the profits and he, one-third. Apparently the profits were distributed or credited according to that agreement. From September 30 to December 16, 1942, the profits were accumulated and were finally distributed, along with the assets of the business, pursuant to the order of the court *219 on December 16, 1942, Mrs. Walsh received one-fourth of the assets and her three assigns one-fourth each. Considering that after his father's death Tom managed the business, taking over the duties theretofore performed by Mr. Walsh, as well as those of his mother, we think that one-third of the profits was not excessive for his share. He was entitled to that proportion of the profits under the preexisting limited partnership agreement. Whether that is considered an amount due him as a partner with Mrs. Walsh, or the estate, or as reasonable compensation for his services, the result is the same for tax purposes. In either case such one-third share would be taxable to him and not to the estate or to Mrs. Walsh. It was clearly the right, if not the duty, of Mrs. Walsh as executrix of the estate to make an arrangement with Tom for the proper conduct of the business during the period of administration. We think that the division of the profits to which they agreed was reasonable and that they should be taxed accordingly. We do not think that the evidence justifies the recognition of any of the assignees of Mrs. Walsh as partners in the business by reason of such assignments. The evidence *220 is that in making the assignments Mrs. Walsh intended to make gifts to each of the assignees of an undivided one-fourth interest in the assets and business of the Thomas A. Walsh Manufacturing Company. The primary purpose of these gifts, we think, was to make it possible for her and the others to conduct the business as a partnership and to share the profits. Neither Tom's wife nor his infant daughter ever performed any services or contributed any new capital to the business. Their right to participate as partners depended entirely upon their contributions of the one-fourth undivided interests in the assets which Mrs. Walsh had assigned to them. Under the decisions of the Supreme Court in Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293, that did not qualify them as business partners. Whether or not this was merely an arrangement for tax savings, in so far as it related to Marjorie C. Walsh and her daughter, it was in essence no more than an assignment to them of a share in the future earnings of the business. Tom, however, was in a different position. He continued to perform valuable services as manager of the business, *221 which, we have found, entitled him to as much as one-third of the profits. In his deficiency notices the respondent recognized the existence of a valid partnership between him and Mrs. Walsh for the period October 1, 1942 to December 31, 1943, but he determined that the income was taxable three-fourths to him and one-fourth to Mrs. Walsh. In his amended answer he asserts that there was no valid partnership at any time and that the income for that period was all taxable to Mrs. Walsh. At the same time, however, he rests upon his determination that Tom was a partner from October 1, 1942, to December 31, 1943, and is taxable on three-fourths of the income for that period. The respondent does not intend, of course, to tax the same income twice. His inconsistent positions will therefore be considered as alternatives. He suggests in his brief that "If the Court determines from the evidence in this case that the relationship of Thomas A. Walsh, Jr., and his mother constituted a bona fide business arrangement and not a reallocation of family income, then the Court may make an allocation of income between Mary P. Walsh and Thomas A. Walsh, Jr. as the evidence may warrant, at least three-fourths *222 of the income for 1943 being allocable to Mary P. Walsh. Clare L. Canfield, supra [7 T.C. 944]." We think that the evidence requires an allocation of the income in question between Mrs. Walsh and Tom. A proper allocation we think would be two-thirds to Mrs. Walsh and one-third to Tom. Certainly Tom's services were worth no less to the business after Mrs. Walsh undertook to assign him a one-fourth interest in the assets than before. He could hardly have consented to the new arrangement except for the fact that his wife and daughter were expected to share in the profits. The evidence does not seem to us to justify taxing Tom on three-fourths of the profits, as the respondent has done in his deficiency notice. It is plain that the profits for all of the different periods here under consideration were attributable in large part to the good will which attached to the Thomas A. Walsh Manufacturing Company. During its thirty years of existence the company had built up a nationwide business and had established a reputation for integrity and honesty that gave it a great advantage over some of the other manufacturers of punchboards. Tom testified in this proceeding that. "The printing on *223 our letterheads was sufficient to gain tremendous quantities of business". This good will was a capital asset which went with the ownership of the other assets of the business. As to just what was the value of the good will, or what percentage of the profits was attributable to it, we do not need to determine. We are satisfied that the income attributable to Mrs. Walsh's interest in the business, including the income from the interests which she purportedly assigned to Tom's wife and daughter, was not less than two-thirds of the whole income. That leaves for consideration the capital gain issue. The respondent determined in his deficiency notice sent to the Estate of Thomas A. Walsh, Deceased, Thomas A. Walsh, Jr., Administrator, that the estate realized a long-term capital gain of $2,666.67 from the dissolution of the Thomas A. Walsh Manufacturing Company. The said amount of $2,666.67 is one-half of the book surplus of the corporation at the time of its dissolution, after adjustments made by the revenue agent, as explained above. The respondent has treated the assets of the dissolved corporation, including the surplus, as all belonging to Thomas A. Walsh, Sr. The respondent's *224 determination rests upon the premise that upon dissolution of the corporation the assets of the Thomas A. Walsh Manufacturing Company all belonged to Thomas A. Walsh, Sr. Although the capital stock of the corporation stood in the name of Mrs. Walsh the parties all seemed to have understood that Mr. Walsh was the real owner. He was so recognized in the formation of the limited partnership which succeeded the corporation. Likewise, in his will he treated those same assets as his personal property and they were administered as a part of his estate. We must therefore sustain the respondent's determination that Mr. Walsh realized a long-term capital gain upon liquidation of the corporation in the amount determined. The respondent proposes to assess the resulting tax liability to Mrs. Walsh as the sole beneficiary under Mr. Walsh's will. Since, as shown above, she received from his estate assets of a value in excess of the amount of the tax liability she is liable as transferee for the full amount thereof. Decisions will be entered under Rule 50.